# In the United States Court of Federal Claims

Nos. 22-292C & 22-317C (consolidated)
Filed: April 21, 2022
Reissued: May 6, 2022†

---

**CONNECTED GLOBAL SOLUTIONS, LLC,**

    *Plaintiff*,

and

**AMERICAN ROLL-ON ROLL-OFF CARRIER GROUP, INC.,**

    *Plaintiff*,

v.

**THE UNITED STATES,**

    *Defendant,*

and

**HOMESAFE ALLIANCE, LLC,**

    *Intervenor-Defendant.*

---

## ORDER

    In this post-award bid protest, Plaintiff, American Roll-on Roll-off Carrier Group, Inc. ("ARC"), claims that awardee, HomeSafe Alliance, LLC ("HomeSafe"), materially misrepresented the security level of its information technology system in its proposal before the agency. (Compl. at ¶ 53, ECF No. 35).[1] On April 4, 2022, ARC moved to conduct discovery related to that alleged misrepresentation. (ARC Mot., ECF No. 36). The Court finds that ARC is entitled to limited discovery related to meeting its burden to prove that HomeSafe's representation was false. However, the Court will not grant the breadth of ARC's request. Nor

---

† This Opinion was filed under seal on April 21, 2022. On May 5, 2022, the parties filed a joint status report proposing redactions of protected information. (ECF No. 50). This public version reflects those redactions.

[1] An unredacted copy of this pleading can be found in Case No. 22-317, ECF No. 1.

does the Court determine at this early juncture whether information gleaned from this limited discovery would properly supplement the administrative record. Accordingly, ARC's Motion is granted-in-part; ARC may serve two interrogatories and a request for admission seeking clarity as to HomeSafe's bases for the purported compliance rating.

In the underlying case, ARC challenges the Department of Defense, U.S. Transportation Command's ("TRANSCOM") decision to award a contract to HomeSafe to perform complete, global household goods relocation services. (Compl. at 3). The Request for Proposal contained four evaluation factors. (Compl. at 4; *see also* ARC Mot. Appendix ("A__") at 002, Ex. 1). Relevant to the pending motion, the Technical Capability Factor was comprised of four equally weighted subfactors: (i) Operational Approach; (ii) Capacity and Subcontractor Management; (iii) Transition/Volume Phase-In; and (iv) Information Technology ("IT") Services. (ARC Mot. A002, Ex. 1). It is this last factor at issue here.

Under the IT Services Sub-Factor, offerors were asked to describe their technical approaches to meeting 16 separate requirements, one of which being "Secure Access." (*Id.*). For this requirement, contractors had to "provide and maintain an easy to use, secure, web-based, mobile device compatible IT system able to manage complete household goods relocation services globally during peak (surge) and non-peak seasons." (ARC Mot. A004, Ex. 2).

To meet the secure access requirement, HomeSafe proposed the use of ███ ███ products and services. (ARC Mot. A006–007, Ex. 3). HomeSafe's proposal indicated that "[a]s ███ has achieved FedRAMP High compliance, HomeSafe is able to take advantage of ███ Authority to Operate (ATO) to ensure its own FedRAMP compliance." (*Id.*). "FedRAMP" refers to the Federal Risk and Authorization Management Program, which provides a standardized approach to security assessment, authorization, and continuous monitoring for cloud products and services as a prerequisite for use by the Federal Government. (USA Resp. Appendix ("A__") at 003–005, ECF No. 38). FedRAMP provides "a uniform way to determine . . . security capabilities." *Oracle Am. v. United States*, 144 Fed. Cl. 88, 118 (2019). The security categories are based on the potential impact that certain events would have on an organization's ability to accomplish its assigned mission, protect its assets, fulfill its legal responsibilities, maintain its day-to-day functions, and protect individuals. (*Id.*). Security ratings are categorized into one of three impact levels—Low, Moderate, and High–across three security objectives—Confidentiality, Integrity, and Availability. (USA Resp. A004).

The FedRAMP program management office maintains a public website that lists all FedRAMP authorizations, including the impact level of each authorization. (ARC Mot. A051, Ex. 5). ARC contends that this website reveals that ███ has achieved authorization only at the Moderate impact level. (ARC Mot. at 4). ARC thus argues that the representation that ███ had achieved a High compliance score is a material misrepresentation and takes issue with ███████████████████████████████████. (*Id.*). ARC cites TRANSCOM's praise of HomeSafe's IT plan, stating:

███████████████████████████████████████

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

(*Id.* citing ARC Mot. A077, Ex. 6) (emphasis removed).

ARC initially protested this award before the Government Accountability Office ("GAO") and, among other arguments, noted this perceived misrepresentation. (ARC Mot. A089–091, Ex. 8). After briefing concluded, the GAO invited the parties to provide additional briefing on the appropriate remedy when an offeror's proposal contains a material misrepresentation. (ARC Mot. A093, Ex. 9). In response, HomeSafe submitted a declaration from the President of one of its subcontractors, MoveHQ, as evidence that HomeSafe did not intend to "mislead the Agency regarding ▆▆▆'s FedRAMP status," and indicated that HomeSafe relied on publicly-available information from ▆▆▆'s website. (ARC Mot. A98, A100–106, Exs. 10, 11; *see also* HomeSafe Resp. at 13, 17, ECF No. 39). The declaration seems to indicate that ▆▆▆▆▆▆▆▆▆▆▆▆▆. It states that ▆▆▆'s website includes documentation ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (ARC Mot. A102, Ex. 11). The referenced documentation provides, in relevant part, that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*Id.*). Further, the declaration states that ▆▆▆ website informed users that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*Id.*). The GAO determined that, based on these representations, HomeSafe had not made material misrepresentations in its proposal. (ARC Mot. A108–110, Ex 12). Although briefing in this case has not begun and the Administrative Record has not been filed, that declaration will necessarily be included. RCFC App. C, ¶ 22(u).

ARC seeks leave to conduct discovery into the subject matter of MoveHQ's declaration HomeSafe submitted to the GAO. (ARC Mot. at 6). Should leave be granted, ARC intends to serve six interrogatories, six requests for production of documents, one request for admission on HomeSafe, and one subpoena for non-party MoveHQ containing the same six requests for production of documents. (*See* ARC Mot. A111–118, Exs. 13, 14). Ordinarily, documents or other evidence not considered by an agency in making a procurement decision should not be added to the administrative record in a procurement-related dispute.

In most protests, the protester challenges, and this Court evaluates, whether an agency reasonably evaluated competing proposals. Because the focal point for judicial review is the agency's administrative record, "the standard for discovery in the bid protest is narrower," than non-bid protest cases. *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 681 (2016). Thus there is often no need for the Court to consider anything beyond the record the agency developed at the time it evaluated proposals. However, not every bid protest fits within that box and some exceptions apply. To justify the "rare" departure from "the rule that review of an administrative decision should be confined to the administrative record," courts reviewing APA claims have required a party seeking discovery to show that "discovery is . . . necessary to create a record without which [a] challenge to the agency's actions cannot be evaluated." *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) (cleaned up). The Court must grant a request to supplement the administrative record or conduct discovery in a bid protest "if

necessary for effective judicial review or if the existing record cannot be trusted." *Diversified Maint. Sys. v. United States*, 93 Fed. Cl. 794, 802 (2010) (internal quotations omitted); *cf. Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009). This Court should refuse "to supplement the record," to permit further "discovery," or "to otherwise add to the record evidence, not previously possessed by the agency" merely because the proponent of such measures believes that it will "improve the court's 'understanding' of a case." *NEQ, LLC v. United States*, 86 Fed. Cl. 592, 593 (2009).

The United Sates and HomeSafe oppose ARC's discovery request, responding that what ARC seeks is unnecessary and overly broad. (*See generally* USA Resp.; HomeSafe Resp.). Both the United States and HomeSafe fail to acknowledge the burden ARC must meet to plead a material misrepresentation. To succeed on its claims, ARC must go further than simply demonstrating the arbitrariness and capriciousness of agency action. In order to establish a material misrepresentation, "plaintiff must demonstrate that (1) [the awardee] made a false statement; and (2) the [agency] relied upon that false statement in selecting [the awardee's] proposal for the contract award." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006) (citation omitted), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007); *see also Sealift, Inc. v. United States*, 82 Fed. Cl. 527, 538 (2008). Thus, here, if ARC can establish that (1) HomeSafe falsely indicated that ▮ had a High security impact rating, and (2) that TRANSCOM relied upon this representation in the awarding of the Contract, then ARC has met its burden of proving a material misrepresentation.

When material misrepresentation in the bidding process is alleged, courts do not examine the subjective mindset of the awarding agency, but "instead look to whether or not the statement itself constitutes misrepresentation—something that is determinable the moment that it is submitted for agency consideration—and then whether or not the agency relied on that statement in making its award decision." *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 484 (2012). As long as the representation was made, then it is appropriate to apply the misrepresentation standard, regardless of when the information casting doubt on the statement came to light. *Id.* To do otherwise promotes the inclusion of unreliable, even plainly false, information into the procurement decision.

At this stage, the record is bare of an administrative record or dispositive motions. Because of the incipient stage of litigation, ARC need only make a threshold showing that "make[s] plausible the inaccurate representation claim." *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 86 (2019). ARC has done so.

This is not a case where the Court would consider information that was before the agency, but instead must consider the conduct of and information available to an awardee. The Court of Federal Claims has recognized that some bid protests necessarily call for consideration of outside documents:

> But what is a plaintiff supposed to do . . . *when the record necessarily lacks relevant documentation given the nature of the specific claims at issue*? In such circumstances, a plaintiff typically will file a motion to add documentation to the administrative record. Such motions can be categorized into two types: supplementing the administrative record in an APA case

4

> means adding material to the volume of documents the agency considered, while admitting extra-record evidence means adding material outside of or in addition to the administrative record that was not necessarily considered by the agency.

*Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 178 (2021) (emphasis added) (internal citations and quotations omitted).

"[I]t is almost inconceivable that the evidence necessary to support a claim of a knowing misrepresentation in a proposal would ever be located in an agency's administrative record filed with the Court." *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 702 (2022) (citations omitted). For the Court to evaluate ARC's material misrepresentation allegations, it logically follows that the Court must consider information supporting that statement. If, as HomeSafe's proposal states, ▮ does in fact have a High impact compliance rating, it must show its work to defend that position.

The Court balances the need for expedient resolution with the parties' burden to establish falsehoods in the bidding process. ARC has alleged that HomeSafe made a material misrepresentation in its proposal and provided at least some evidence to support that claim; whether ARC's claim is true remains to be seen. Whether HomeSafe's representation was in fact false is contingent on information that will necessarily not appear in the Administrative Record. *See Orion International Technologies v. United States*, 60 Fed. Cl. 338 (2004) (permitting discovery where the necessary evidence to support a misrepresentation claim is "not something that would ever normally be found in an agency's record"). ARC bears the burden of proof in this instance, but this Court will not blockade ARC's pursuit of information necessary to meet that burden. ARC's material misrepresentation claim necessitates consideration of evidence that one could not reasonably expect to be contained in the administrative record. *See Golden IT*, 157 Fed. Cl. at 688. Therefore, the Court grants-in-part ARC's request for discovery.

That said, the breadth of the discovery must be narrowly tailored to the representation made and the burden of proof—i.e., whether HomeSafe's statement is false. ARC seeks to serve six interrogatories, six requests for production of documents, one request for admission on HomeSafe, and one subpoena for non-party MoveHQ containing the same six requests for production of documents. (ARC Mot. at 6). Depending on the information provided and "thoroughness" of the responses, ARC states that one or more depositions may also be necessary. (*Id.*). These requests are overly broad, which is why the Court grants only part of ARC's request.

The first four interrogatories seek information about the individuals who participated in drafting or reviewing any part of HomeSafe's misrepresentation or MoveHQ's declaration:

> 1) Identify all persons who participated in drafting or reviewing any part of the Representation.
>
> 2) Identify all persons who participated in drafting or reviewing any part of the Declaration.
>
> 3) Identify all persons who provided information relevant to the Declaration and the information provided.

> 4) For each person identified in response to Interrogatory Nos. 1, 2, or 3, identify all relevant experience, education, training, or other source of any potential knowledge the person possesses that could bear on the person's ability to opine on any matter included in the Representation or the Declaration.

(ARC Mot. A113-114, Ex. 13). The identity of those who participated in drafting and reviewing of the compliance-rating representation and declaration before the GAO are irrelevant so long as HomeSafe and its subcontractor stand by the questioned representation. There is no indication that HomeSafe has suddenly changed positions. Stated differently, unless HomeSafe no longer believes that its IT company has a High FedRAMP score and now believes that the statements were made by a rogue employee or in error, the only relevant information is the basis for HomeSafe's belief—not the identity of the persons responsible for the statement's inclusion in HomeSafe's proposal.

The next two interrogatories seek clarification for two specific statements that HomeSafe made in its proposal or MoveHQ made in its declaration:

> 5) Identify all bases for HomeSafe's representation, position, or view that "▇ has achieved FedRAMP High compliance."
>
> 6) Identify "▇'s FedRAMP status," as that term is used in Paragraph 10 in the Declaration, and all bases for this position.

(*Id.* A114). The Court finds these interrogatories to be pertinent. The declaration HomeSafe submitted to the GAO indicates that the credibility rating was correctly conveyed based on information available to it at the time. "What information?" is not an outlandish question in the face of HomeSafe's position. Accordingly, these two interrogatories are relevant and directed to the narrow issue of whether HomeSafe's representation was indeed false.

ARC's proposed requests for production seek the source documents behind various arguments or claims that HomeSafe made:

> 1) All communications involving one or more persons involved in the GHC Procurement regarding whether, how, or when ▇ achieved FedRAMP High compliance.
>
> 2) All communications involving one or more persons involved in the GHC Procurement regarding how HomeSafe or any of its teammates in the GHC Procurement may be able to take advantage of ▇'s Authority To Operate to ensure its own FedRAMP compliance.
>
> 3) All communications involving one or more persons involved in the GHC Procurement regarding any security-related authorizations ▇ has or has not obtained.

6

4) All communications involving one or more persons involved in the GHC Procurement regarding any statement contained in the Declaration or the preparation of the Declaration.

5) The ███████████████████████ referred to in the attachment to the Declaration entitled ███████████████████████.

6) All communications involving one or more persons involved in the GHC Procurement regarding ███████████████████████ referred to in the attachment to the Declaration entitled ███████████████████████.

(*Id.* A114-115). The relevance of these requested communications is not apparent. At most, those communications might tend to show the mindset of employees, agents, and associates of HomeSafe. Assuming this would go to HomeSafe's intent, rather than the fact that HomeSafe made a misrepresentation, that is not at issue. *See NetCentrics Corp. v. United States*, 145 Fed. Cl. 158, 169 (2019) (finding that an agency has discretion to disqualify a proposal that contains a material misrepresentation without regard to whether the misrepresentation was intentional). Consequently, discovery of this information is unwarranted. ARC requests to subpoena MoveHQ for the same production of documents. For the reasons that this level of discovery is not warranted from HomeSafe, the Court extends that finding to MoveHQ. Therefore, the Court will not grant leave for ARC to subpoena MoveHQ.

Finally, ARC also intends to issue the following request for admission:

1) Admit that ███ has not obtained an authorization to operate at the High impact level from any entity authorized to grant such an authorization under FedRAMP.

(*Id.* A115). ARC claims that this request will "force HomeSafe to either acknowledge what the publicly available information shows or provide an explanation for denying what it confirms." (ARC Reply at 9, ECF No. 41). Although the request appears redundant, such an admission is not overly burdensome and is relevant to the material misrepresentation analysis. Therefore, the Court will allow ARC to serve this single Request for Admission.

For the reasons stated above, the Court hereby orders as follows:

(1) ARC's Motion is **GRANTED-IN-PART**.

(2) ARC may serve HomeSafe with two interrogatories, (ARC Mot. A114 ¶ 5–6, Ex. 13), and the single request for admission, (ARC Mot. A115, Ex. 13).

(3) All deadlines for dispositive briefing pursuant to the Court's Scheduling Order, (ECF No. 28), are unaffected.

(4) Responses to ARC's interrogatories and request for admission are due on or by April 27, 2022.

(5) ARC must file a Motion to Supplement, if any, on or by May 2, 2022. Any documents that ARC wishes to supplement shall be attached as exhibits to that motion.

(6) Responses in opposition to supplementing the record, if any, are due on or by May 9, 2022.

(7) Replies in support of supplementing the record, if any, are due May 12, 2022.

For purposes of drafting Motions for Judgment on the Administrative Record, the parties remain free to cite the documents ARC seeks to add, although that constitutes no guarantee of whether, or for what purpose, the Court may ultimately consider the documents in question. The Court retains discretion to consider or refuse to consider such documents in its final decision.

**IT IS SO ORDERED.**

s/      David A. Tapp
DAVID A. TAPP, Judge