# In the United States Court of Federal Claims

No. 22-292C
Filed: June 2, 2022†
Reissued: June 21, 2022

| | |
|---|---|
| **CONNECTED GLOBAL SOLUTIONS, LLC,** | |
| *Plaintiff,* | |
| and | |
| **AMERICAN ROLL-ON ROLL-OFF CARRIER GROUP, INC.,** | |
| *Plaintiff,* | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant,* | |
| and | |
| **HOMESAFE ALLIANCE, LLC,** | |
| *Intervenor-Defendant.* | |

**ORDER**

      Although the merits are not yet at issue, the Court must decide whether to supplement the Administrative Record in this post-award bid protest. Plaintiff, American Roll-On Roll-Off Carrier Group, Inc. ("ARC"), claims that awardee, HomeSafe Alliance, LLC ("HomeSafe"), materially misrepresented the security level of its information technology system ("▮▮▮") in its proposal before the agency. (Compl. at ¶ 53, ECF No. 35). On April 21, the Court granted ARC limited discovery related to its burden to prove that HomeSafe's representation was false. *See Connected Global Solutions, LLC, & American Roll-On Roll-Off Carrier Group, Inc., v. United States*, __ Fed. Cl. __, WL 1439432, at *1 (Fed. Cl. Apr. 21, 2022) (Order Granting Disc., ECF

---

† This Order was filed under seal on June 2, 2022. (ECF No. 67). On June 16, 2022, the parties filed a joint status report proposing redactions of protected information. (ECF No. 73). This public version reflects those redactions.

No. 51). ARC now moves to supplement the Administrative Record, (Mot. to Supp., ECF No. 47), proposing inclusion of six additional documents. For the reasons set forth below, the Court **GRANTS-IN-PART AND DENIES-IN-PART** ARC's Motion to Supplement.

The ability to submit additional information into an administrative record is limited. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). The purpose of limiting review to the record before the procuring agency is to prevent courts from using new evidence to "convert the 'arbitrary and capricious' standard into effectively *de novo* review." *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). Because the focal point for judicial review is the agency's administrative record, "the standard for discovery in the bid protest is narrower," than in non-bid protest cases. *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 681 (2016); *see also Murakami*, 46 Fed. Cl. at 735 ("[E]xceptions to the general rule against extra-record evidence are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review."). The Court must grant a request to supplement the administrative record or conduct discovery in a bid protest only "if necessary for effective judicial review or if the existing record cannot be trusted." *Diversified Maint. Sys. v. United States*, 93 Fed. Cl. 794, 802 (2010) (internal quotations omitted); *cf. Axiom Res. Mgmt.*, 564 F.3d at 1381 (Fed. Cir. 2009).

Only in extremely limited circumstances is supplementation of the administrative record appropriate, such as where the agency failed to consider relevant factors or where there is some evidence of bad faith or improper behavior by agency officials. *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997)); *see also Axiom*, 564 F.3d at 1379 (citing *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997)). This Court is limited to supplementing the record in instances in which it can "explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether [the agency action] was arbitrary and capricious." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1379–80).

In most procurement disputes, this Court determines whether an agency reasonably evaluated competing proposals. Alleged misrepresentations in proposals make the ensuing protests an anomaly. When a protester alleges material misrepresentation in the bidding process, courts do not examine the subjective mindset of the awarding agency, but "instead look to whether or not the statement itself constitutes misrepresentation—something that is determinable the moment that it is submitted for agency consideration—and then whether or not the agency relied on that statement in making its award decision." *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 484 (2012).

Like its opposition to ARC's Motion to conduct discovery, both the United States and HomeSafe fail to acknowledge ARC's burden in proving a material misrepresentation. ARC seeks to augment the administrative record with three categories of documents that ARC submits will support its claim that HomeSafe made a material proposal misrepresentation regarding ███████ commercial technology access management solution. (Compl. at ¶ 53, ECF No. 35). These allegations are not related to the agency's failure to consider facts before it. Instead, misrepresentation protests are centered around facts available to a bidder but not the agency. Thus, any argument that these documents were not considered by the agency is unyielding.

2

This Court previously found that, to succeed on its misrepresentation claims, ARC must go further than demonstrating the arbitrariness and capriciousness of agency action as in a typical bid protest. (Order Granting Disc. at 4). To establish a material misrepresentation, "plaintiff must demonstrate that (1) [the awardee] made a false statement; and (2) the [agency] relied upon that false statement in selecting [the awardee's] proposal for the contract award." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006) (citation omitted), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007); *see also Sealift, Inc. v. United States*, 82 Fed. Cl. 527, 538 (2008). The underlying motion centers on the first factor. It would be naïve to believe "that the evidence necessary to support a claim of a knowing misrepresentation in a proposal would ever be located in an agency's administrative record filed with the Court." *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 702 (2022) (citations omitted). For the Court to evaluate ARC's material misrepresentation allegations, it logically follows that the Court must consider information supporting those allegations. Otherwise, misrepresentations contained within a proposal, whether made intentionally or not, would never be redressable as part of a bid protest review.

In its prior decision, the Court addressed a declaration submitted in proceedings before the Government Accountability Office ("GAO"). At the GAO's request, HomeSafe submitted a declaration from the president of one of its subcontractors, MoveHQ, as evidence that HomeSafe did not intend to "mislead the Agency regarding ▮▮▮ [Federal Risk and Authorization Management Program (FedRAMP)] status," and indicated that HomeSafe relied on publicly available information from ▮▮▮ website. (ARC Mot. for Disc. A98, A100–106, Exs. 10, 11, ECF No. 36). The declaration indicates that the program could be configured to meet specific needs in instances where a High rating was necessary; it states that ▮▮▮ website includes documentation advising users on how to configure ▮▮▮ for FedRAMP compliance. (ARC Mot. for Disc. A102, Ex. 11). That declaration is necessarily included in the Administrative Record pursuant to RCFC App. C, ¶ 22(u). The United States takes the position that the inclusion of the declaration obviates the need for ARC's proposed supplementation and adequately explains the basis for HomeSafe's representation. (USA Resp. at 2–3, ECF No. 52). However, the Court notes again that the relevant inquiry here is whether HomeSafe's representation on its face was *false*, not HomeSafe's intent. It must evaluate the information HomeSafe's subcontractor considered in making its representation to ensure that it is truthful.

Before addressing each of the six exhibits ARC proposes to add to the existing record, the Court notes that HomeSafe's opposition is heavily based on the public availability of five of those documents. (HomeSafe Resp. at 4, ECF No. 53). The Court acknowledges that, generally "publicly available documents" may be "freely cited" even without being included in the administrative record. *See Harkcon, Inc. v. United States*, 132 Fed. Cl. 697, 701 (2017) (citing FRE 201). Because courts must supplement the administrative record only out of necessity, it would be inappropriate to include publicly available documents. The Court may take judicial notice of those documents, but notice must be consistent with the provisions of FRE 201. *Confidential Informant 59–05071 v. United States*, 134 Fed. Cl. 698, 711 (2017), *aff'd*, 745 Fed. Appx. 166 (Fed. Cir. 2018) (mem.) (citations omitted). HomeSafe objects to ARC's motion because Exhibits 1, 3, 4, 5, and 6 are "publicly available" on a "U.S. Government system" so "the parties can cite to [them] in their respective briefs regardless of inclusion in the administrative record." (HomeSafe Resp. at 6 (discussing Exhibits 1 and 5); *Id.* at 11 (discussing Exhibits 3, 4, and 6)). ARC concedes that, should the Court take judicial notice of those

3

documents, its request to supplement the record with them would be moot. (ARC Reply at 6, ECF No. 55). The Federal Circuit has held that whether to take judicial notice is a matter of discretion for the Court. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014).

FRE 201(a) defines the scope of judicially noticeable facts as "adjudicative fact[s] only, not . . . legislative fact[s]." FRE 201(b) permits this Court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." When taking judicial notice pursuant to a request of the parties, the Court must be "supplied with the necessary information." FRE 201(c)(2). Courts have previously taken judicial notice of definitions in dictionaries and encyclopedias; the outcome of previous judicial decisions; and addresses of government buildings. *Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 547 (2020) (citations omitted). Conversely, courts have declined to take judicial notice of findings of both fact and law in related court proceedings in another court; news articles and press releases; and the authenticity of various documents and statements contained therein. *Id.* (citations omitted). Against this backdrop, the Court will address each proposed exhibit in turn.

A.   *Exhibit 1*

First, ARC proposes to submit a screenshot from the FedRAMP website showing that ▮ "obtained an authorization to operate on ▮ at only the Moderate impact level." (Mot. to Supp. Ex. 1). ARC argues that this evidence of ▮ FedRAMP status at the time HomeSafe submitted its proposal is necessary for the Court to evaluate whether HomeSafe's representation was false.

In opposition, HomeSafe and the United States rely on (1) the fact that the information is publicly available, (2) that the proposed exhibit is undated and does not reflect all the information in FedRAMP regarding ▮, and (3) that the declaration HomeSafe submitted to the GAO is sufficient for effective for judicial review and obviates the need for review of the remaining exhibits. (USA Resp. at 4, ECF No. 52; HomeSafe Resp. at 4–7). First, Exhibit 1 is distinguishable from other "publicly available documents." While ▮ FedRAMP status information is currently publicly available, it is subject to updates. This becomes particularly problematic considering ▮ pending application for authorization at a higher impact level. Because the information is subject to change, the Court finds that it would be improper to take judicial notice of the website's contents regarding ▮ FedRAMP status.

As to the second part of the Defendants' opposition (that Exhibit 1 should not be used to supplement the record because it is undated and "appears incomplete"), the Court is not persuaded. There is no contest as to the validity of the contents of Exhibit 1. Under RCFC 11(b), by presenting this document to the Court, ARC's attorney certifies the veracity of the document and that, to the best of counsel's knowledge, the document is not being presented for any improper purpose and has evidentiary support. HomeSafe makes no attempt to rebut that presumption. As a broader point, the Court can weigh the shortcomings of its style and presentation against its contents.

ARC contends that HomeSafe misrepresented that ▇ had achieved a High compliance rating. (Mot. to Supp. at 2–3). HomeSafe states that this is not in fact what its proposal represents and it is not how the agency interpreted that representation. (HomeSafe Resp. at 6). HomeSafe's argument goes to the merits of this protest rather than whether the document supports ARC's misrepresentation claim. At this stage, the Court is not positioned to consider the merits of the protest. HomeSafe is adamant that its proposal does not assert that ▇ holds a FedRAMP High impact score. That is an argument appropriately reserved for HomeSafe's Motion for Judgment on the Administrative Record.

It is necessary for the Administrative Record to show and the Court to evaluate whether, as ARC alleges, HomeSafe's representation was false. Effective judicial review of whether HomeSafe misrepresented ▇ compliance rating requires reviewing the rating in effect when HomeSafe submitted its proposal. The Court will grant ARC's Motion as to Exhibit 1.

B.   *Exhibit 2*

Second, ARC moves to supplement the Record with Exhibit 2—HomeSafe's answers to interrogatories and response to the request for admission. ARC contends that Exhibit 2 supports that "▇ has not obtained an authorization to operate at the High impact level from any entity authorized to grant such an authorization under FedRAMP." (Mot. to Supp. Ex. 2). In light of the Court's discovery ruling, HomeSafe does not object to the inclusion of this document.

The United States, on the other hand, objects to the inclusion of Exhibit 2 because, it contends, effective judicial review can be completed without it. That objection is largely based on the United States' reliance on the declaration from HomeSafe's subcontractor. Presumably, though, these specific interrogatories point to the entirety of information used in drafting HomeSafe's proposal and the representation in question. The Court must understand the reasoning behind HomeSafe's statement. A declaration from HomeSafe's subcontractor is no substitute for that information, which is contained in the interrogatories. The fact the United States believes the declaration would sufficiently serve the same purpose is disingenuous as that declaration is not as fulsome.

The Court finds that the basis and reasoning supporting HomeSafe's representation is imperative to effective judicial review of ARC's misrepresentation claim. Therefore, effective judicial review requires the Court to consider HomeSafe's process in reaching its determination. The Court cannot effectively review that determination process solely by considering the declaration produced before the GAO. Exhibit 2 is a proper supplement to the Administrative Record.

C.   *Exhibits 3 and 6*

Next, ARC urges the Court to supplement the Administrative Record with information maintained by the FedRAMP program management office and Department of Defense. (Mot. to Supp. at 3). That information purports to explain aspects of the authorization management program, including the impact levels at which authorizations are granted. (*Id.*). Both Exhibits 3 and 6 pose the same general issues, thus the Court will address them in unison.

Exhibit 3 is FedRAMP's Cloud Service Provider Authorization Playbook. (Mot. to Supp. Ex. 3). The proposed version of FedRAMP's Cloud Service Provider Authorization Playbook is dated January 18, 2022. Exhibit 6 is the Cloud Computing Security Requirements Guide, Version 1, Release 4, dated January 14, 2022. Both documents post-date the November 3, 2021 award to HomeSafe. ARC asserts that because the United States does not point out what differences exist between the relevant documents and the updated ones, the updated versions are of the same value to judicial review as the Playbook and Guide published prior to award. However, it is not an opposing party's burden to prove the shortcomings of a proposed exhibit to supplement the Administrative Record. Instead, this burden to show its necessity lies with the movant. Reference guides whose publication post-dates the award decision are not necessary to effective judicial review.

Further, ARC has not shown that these documents would be necessary for effective judicial review. This Court should refuse "to supplement the record," to permit further "discovery," or "to otherwise add to the record evidence, not previously possessed by the agency" merely because the proponent of such measures believes that it will "improve the court's 'understanding' of a case." *NEQ, LLC v. United States*, 86 Fed. Cl. 592, 593 (2009). Therefore, the Court will not supplement the administrative record with Exhibits 3 and 6, though the Court acknowledges that those documents are publicly available.

D.   Exhibit 4

Next, ARC moves to supplement the Administrative Record with the "FedRAMP Master Acronym and Glossary." (Mot. to Supp. Ex. 4). This document defines many terms used throughout FedRAMP policies or other documents. (Mot. to Supp. at 4). It is a publicly available document that may be freely cited without being included in the administrative record. There is no question as to the authenticity of this document. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice that Exhibit 4 is available at https://www.fedramp.gov/assets/resources/documents/FedRAMP_Master_Acronym_and_Glossary.pdf (last accessed May 21, 2022) and is what ARC purports it to be. Because judicial notice obviates ARC's request, the Court will not supplement the administrative record with Exhibit 4.

E.   Exhibit 5

ARC seeks to supplement the Administrative Record with Exhibit 5, a screenshot from the FedRAMP website showing that ▓▓▓▓ did not begin the process to seek authorization under the High impact level until ▓▓▓▓▓▓▓▓. (Mot. to Supp. Ex. 5 (5 pages)). There is no specific objection to the inclusion of this exhibit in the Administrative Record. The United States again believes that the record is adequate on its face, (USA Resp. at 4), and HomeSafe objects to the exhibit because it is not dated. The Court is not persuaded by either argument.

As the Court previously noted, RCFC 11(b) ensures that this proposed document is not being presented for any improper purpose and has evidentiary support. Further, the Court can weigh the shortcomings of style and presentation of the document against the contents located therein.

6

ARC asserts that the FedRAMP website screenshot establishes when ▮▮ FedRAMP "in process" status to operate at a High authorization began. (Mot. to Supp. at 4). ARC acknowledges that Exhibit 5 is not relevant to the question of whether HomeSafe's proposal contains a material misrepresentation. (*Id.*). However, ARC goes on to explain that because HomeSafe alluded to this "in process" effort to "clarif[y]" its admission "it is important that the administrative record include evidence showing when ▮▮ first started this process." (*Id.*). Because Exhibit 5 is referenced in HomeSafe's interrogatories, its incorporation is necessary for effective judicial review.

Based on the foregoing, the Court hereby **ORDERS** as follows:

1. ARC's Motion to Supplement the Administrative Record with Exhibit 1 is **GRANTED**.

2. ARC's Motion to Supplement the Administrative Record with Exhibit 2 is **GRANTED.**

3. ARC's Motion to Supplement the Administrative Record with Exhibit 3 is **DENIED.**

4. Because the Court takes judicial notice of this document, ARC's Motion to Supplement the Administrative Record with Exhibit 4 is **DENIED.**

5. ARC's Motion to Supplement the Administrative Record with Exhibit 5 is **GRANTED.**

6. ARC's Motion to Supplement the Administrative Record with Exhibit 6 is **DENIED.**

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge